DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant Nick Trikilis has appealed from the judgment of the Medina County Court of Common Pleas, Juvenile Division, which found him to be the natural father of Appellee DeAnn Maxwell's child. This Court affirms.
 I *Page 2 {¶ 2} On February 11, 2004, Ms. Maxwell filed a complaint to determine the existence of a parent-child relationship between her daughter and Appellant. Appellant received a continuance and was then appointed counsel to proceed in the matter. Following a hearing, Appellant was ordered to submit to genetic testing. Appellant objected to the testing, asserting that it violated his religious freedom. The trial court overruled Appellant's objection and a buccal swab was taken from Appellant. Appellant then asserted that the swab was taken by threat of force and should not be used. For an unknown reason, the laboratory which took the swab discarded it prior to performing genetic testing.
 {¶ 3} The trial court then ordered that a second swab be taken. Appellant objected for the same reasons and his objection was again overruled. Following the swab being taken, Appellant again asserted that it was taken by threat of force and moved to exclude it. The trial court denied Appellant's motion to exclude the testing results.
 {¶ 4} At a hearing, those results were entered into evidence and showed a 99.971% probability that Appellant was the father of the child. This evidence was supported by Ms. Maxwell's testimony that Appellant was the only man with whom she was sexually active during the time her child was conceived. Appellant's counsel objected to the entire hearing on the basis that his client was not permitted to attend because he was currently incarcerated. The trial court *Page 3 
overruled Appellant's objection and concluded that a parent-child relationship existed between Appellant and the child.
 {¶ 5} The trial court then set the matter for a hearing on the amount of child support. At that time, Appellant was no longer incarcerated. The trial court, therefore, served Appellant with notice of the hearing at the address Appellant had provided to the court. Appellant did not appear at the hearing and the trial court ordered that Appellant pay $184.57 per month in child support plus arrearages. Appellant has timely appealed from the trial court's order, raising seven assignments of error for review.
 II Assignment of Error Number One "APPELLANT'S CONSTITUTIONAL RIGHTS WERE VIOLATED BECAUSE GENETIC SAMPLES FOR PATERNITY TESTING WERE OBTAINED FROM HIM BY FORCE, THREAT OF FORCE OR COERCION ON TWO SEPARATE OCCASIONS, WHERE THE JUVENILE COURT ORDERS DID NOT AUTHORIZE THE USE OF SUCH FORCE OR COERCION BUT ONLY PROVIDED THAT APPELLANT COULD BE HELD IN CONTEMPT IF HE DECLINE[D] TO SUBMIT TO GENETIC TESTING."
 {¶ 6} In his first assignment of error, Appellant has asserted that his constitutional rights were violated. Specifically, Appellant has argued that the trial court erred in permitting the use of the results of a genetic test taken by force. This Court disagrees. *Page 4 
 {¶ 7} In support of his argument, Appellant has relied upon Rochin v.California (1952), 342 U.S. 165, for the proposition that outrageous government action may result in the exclusion of evidence. InRochin, officers forcibly extracted the contents of the defendant's stomach by having his stomach pumped against his will at a local hospital. In excluding the evidence, the high Court found that the government's conduct was outrageous.
 {¶ 8} Herein, the government conduct does not approach outrageous. By Appellant's own affidavit, two officers "had their hands on my shoulders" when the genetic sample was taken. Moreover, the genetic testing was minimally invasive as it was performed by a buccal swab rather than by drawing blood. See, e.g., State v. Cremeans,160 Ohio App.3d 1, 2005-Ohio-928, at ¶ 26 (finding that the drawing of blood is "minimally invasive"). Accordingly, the actions herein alleged to have occurred do not rise to the level of the outrageous conduct discussed inRochin. Appellant, therefore, has failed to demonstrate that his due process rights were violated.
 {¶ 9} Additionally, assuming arguendo that a violation of Appellant's rights did occur, he has offered no support for his conclusion that the genetic test results should have been excluded because of that violation. As the Supreme Court has held "[generally, the exclusionary rule has not been applied in civil cases; we see no reason to expand the exclusionary rule to the facts of this case." State ex rel. Rear DoorBookstore v. Tenth Dist. Ct. of Appeals (1992), *Page 5 63 Ohio St.3d 354, 364. Like the Supreme Court, we see no reason to expand the exclusionary rule to include the actions at issue herein. As such, Appellant's first assignment of error lacks merit.
 Assignment of Error Number Two "THE JUVENILE COURT ERRED BY ORDERING A SECOND GENETIC TEST OF APPELLANT, WHERE THE LABORATORY THREW OUT THE FIRST GENETIC SAMPLE OBTAINED FROM APPELLANT."
 {¶ 10} In his second assignment of error, Appellant has argued that the trial court erred in ordering more than one genetic test. We disagree.
 {¶ 11} R.C. 3111.09 regulates genetic testing for the purposes of paternity suits. In support of his argument, Appellant has argued that R.C. 3111.09 is silent regarding the number of tests that may be performed and has urged that this Court should adopt a test for permitting multiple tests to be performed. Appellant's assertions, however, lack merit.
 {¶ 12} While two buccal swabs were taken from Appellant, only one genetic test was performed. As only one test was performed, this Court need not address the issue of the circumstances under which the trial court may order more than one test. Accordingly, Appellant's second assignment of error lacks merit.
 Assignment of Error Number Three "THE JUVENILE COURT ORDERS THAT APPELLANT SUBMIT TO GENETIC TESTING, AND THE ACTUAL TAKING OF GENETIC SAMPLES FROM APPELLANT ON TWO SEPARATE OCCASIONS, WERE CONTRARY TO APPELLANT'S RELIGIOUS BELIEFS AND VIOLATED HIS *Page 6 
RIGHTS UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 7 OF THE OHIO CONSTITUTION."
 {¶ 13} In his third assignment of error, Appellant has asserted that the trial court violated his right to the free exercise of his religion when it ordered that his genetic material be collected. This Court disagrees.
 {¶ 14} The Ohio Supreme Court has explained that the State's Constitution affords greater protection against infringement upon the exercise of religion than the U.S. Constitution.
 "[T]he Ohio Constitution's free exercise protection is broader, and we therefore vary from the federal test for religiously neutral, evenly applied government actions. We apply a different standard to a different constitutional protection. We adhere to the standard long held in Ohio regarding free exercise claims — that the state enactment must serve a compelling state interest and must be the least restrictive means of furthering that interest. That protection applies to direct and indirect encroachments upon religious freedom." Humphrey v. Lane (2000), 89 Ohio St.3d 62, 68.
 {¶ 15} Herein, there is no evidence to dispute that Appellant holds a genuine religious belief. See State v. Whisner (1976),47 Ohio St.2d 181. In his affidavit, Appellant asserted that his purported religion, Spiritual Individualism, contains a tenet that nothing can be taken from the body unless it serves a medical purpose. As such, there is no question that the State's action in extracting a DNA sample infringes upon that belief. Accordingly, Appellant met his initial burden in demonstrating a violation of his right to the free exercise of his religion. Humphrey, 89 Ohio St.3d at 68-69. Therefore, "the burden shifts to the state to *Page 7 
prove that the regulation furthers a compelling state interest. Once that aspect has been satisfied, the state must prove that its regulation is the least restrictive means available of furthering that state interest." Id. at 69.
 {¶ 16} In extracting Appellant's DNA, the State sought to establish that he was the father of Appellee Deann Maxwell's child. "[I]n any paternity action, the state has a substantial interest in safeguarding the rights of the child to needed support from his or her natural father, while at the same time protecting the interests of its taxpayers." Marsh v. Clay (Dec. 28, 2000), 8th Dist. No. 77171, at *2. We agree with our sister court that the State has a compelling interest in ensuring that the children of this State are financially supported by their natural parents. As such, we turn to whether the State's method is the least restrictive means available for achieving that result.
 {¶ 17} In the instant matter, the State obtained Appellant's DNA through a buccal swab. There is no dispute that this procedure is minimally invasive and less invasive than drawing blood. See, e.g.,Doe v. Senechal (2000), 431 Mass. 78, 85 (finding that the use of a buccal swab is reasonable because it would "provide test results that will significantly aid [the mother] in establishing liability, or may substantially exclude [the defendant] as the father of her child."). The swab is inserted into the mouth and run along the cheek or gum line. We agree with the State that its use of a buccal swab was the least restrictive means available for establishing paternity. *Page 8 
 {¶ 18} The means used by the State was minimally intrusive and the results obtained therefrom nearly conclusively established that Appellant was the father of Ms. Maxwell's child. In addition, given that Appellant asserted that numerous other individuals could be the father of the child, this Court finds that there is no less intrusive alternative to the testing performed by the State to resolve this dispute. As such, we conclude that the State's use of the buccal swab satisfies its obligation to use the least restrictive means available for achieving its result. Accordingly, the State met its burden to refute Appellant's claim that his right to the free exercise of his religion was violated. Appellant's third assignment of error lacks merit.
 Assignment of Error Number Four "THE JUVENILE COURT ABUSED ITS DISCRETION AND VIOLATED APPELLANT'S COSNTITUTIONAL (sic) RIGHTS BY DENYING HIS MOTION TO BE TRANSPORTED FROM PRISON FOR THE PATERNITY TRIAL/HEARING AND BY REFUSING TO CONTINUE THE TRIAL/HEARING UNTIL AFTER APPELLANT'S RELEASE FROM PRISON A FEW MONTHS LATER."
 {¶ 19} In his fourth assignment of error, Appellant has asserted that the trial court erred when it failed to continue its hearings to permit Appellant to attend those hearings. We disagree.
 {¶ 20} A trial court's ruling on the request of an incarcerated criminal to appear at a civil action by requiring authorities to transport him to trial rests within the sound discretion of the trial court. Mancino v. Lakewood (1987), *Page 9 36 Ohio App.3d 219, 221, citing Holt v. Pitts (C.A.6, 1980), 619 F.2d 558,560-561. Generally, prisoners have no constitutional right to be personally present at any stage of the judicial prceedings. Id. The United States Supreme Court has held as follows:
 "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Among those so limited is the otherwise unqualified right given by § 272 of the Judicial Code, 28 U.S.C. § 394 [now Section 1654, Title 28, U.S.Code], to parties in all courts of the United States to `plead and manage their own causes personally.'" Price v. Johnston (1948), 334 U.S. 266, 285-286.
Our sister court in Mancino then discussed eight factors which should be examined in determining whether a prisoner should be permitted to attend the trial. Those factors are as follows:
 "(1) whether the prisoner's request to be present at trial reflects something more than a desire to be temporarily freed from prison; (2) whether he is capable of conducting an intelligent and responsive argument; (3) the cost and convenience of transporting the prisoner from his place of incarceration to the courthouse; (4) any potential danger or security risk the prisoner's presence might pose; (5) the substantiality of the matter at issue; (6) the need for an early resolution of the matter; (7) the possibility and wisdom of delaying the trial until the prisoner is released; (8) the probability of success on the merits; and (9) the prisoner's interest in presenting his testimony in person rather than by deposition." Mancino, 36 Ohio App.3d at 222.
 {¶ 21} In support of his argument, Appellant has urged that the above factors support a finding that he should have been permitted to attend the hearing. We disagree. *Page 10 
 {¶ 22} Initially, we note that the above factors reference the propriety of permitting a prisoner to appear in an action pro se. Herein, Appellant was appointed an attorney. As such, Appellant's arguments were presented and witnesses were cross-examined. Accordingly, the need for Appellant to personally appear to present his own case was greatly alleviated.
 {¶ 23} Moreover, the matter herein was straightforward and uncomplicated. Ms. Maxwell testified that Appellant was the only man with whom she was sexually active during the time her child was conceived. Furthermore, genetic testing revealed a probability of 99.971% that Appellant was the father of the child. As such, there is an extremely small probability of Appellant being successful in his argument that he is not the child's father. Additionally, as noted above, the State has a compelling interest in ensuring that the child is properly supported. Delaying the proceedings would only have served to undermine that purpose. Accordingly, we find no abuse of discretion in the trial court's decision to deny Appellant's motion to appear at the hearing. Appellant's fourth assignment of error lacks merit.
 Assignment of Error Number Five "APPOINTED COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL TO APPELLANT AT THE PATERNITY HEARING PHASE OF THE PROCEEDINGS."
 {¶ 24} In his fifth assignment of error, Appellant has asserted that he received ineffective assistance of counsel in the trial court. We disagree. *Page 11 
 {¶ 25} A claim of ineffective assistance of counsel requires Appellant to satisfy a two prong test. First, he must prove that trial counsel's performance was deficient. Strickland v. Washington (1984),466 U.S. 668, 687. Appellant "must show that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed Appellant by theSixth Amendment." State v. Srock, 9th Dist. No. 22812, 2006-Ohio-251, at ¶ 20, citing Strickland, 466 U.S. at 687. Second, Appellant must "demonstrate that he was prejudiced by his trial counsel's deficient performance." Srock at ¶ 21. Prejudice entails "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. Further, this Court need not analyze both prongs of the Strickland test if we find that Appellant failed to prove either. State v. Ray, 9th Dist. No. 22459, 2005-Ohio-4941, at ¶ 10. Finally, Appellant must overcome the strong presumption that licensed attorneys in Ohio are competent. State v. Smith (1985),17 Ohio St.3d 98, 100.
 {¶ 26} In support of his argument, Appellant has argued that his counsel was ineffective for failing to file a jury demand, for failing to object to the admission of the genetic test results, for failing to investigate a possible conflict of interest, and for failing to answer the legal questions raised by Appellant. Specifically, Appellant has asserted that his counsel failed to investigate whether the magistrate who heard this matter was related to an attorney with the same last *Page 12 
name who had represented Appellant's brother. Upon review, we find no prejudice from any of the alleged errors made by Appellant's trial counsel.
 {¶ 27} With respect to a jury demand, Appellant has failed to demonstrate that the result of his bench trial would have been different but for his counsel's failure to make a jury demand. As noted above, Ms. Maxwell testified unequivocally that Appellant was the only man with whom she was sexually active when her child was conceived. While Ms. Maxwell admitted to also having a sexual relationship with her husband and with Appellant's brother, her testimony was unchallenged that those relationships were not sexual at the time her child was conceived. Genetic testing then demonstrated a probability of 99.971% that Appellant was the father of the child. As such, Appellant has not demonstrated a reasonable probability that the outcome of his trial would have been different if his counsel had requested a jury trial.
 {¶ 28} With respect to his final three arguments, Appellant has not demonstrated prejudice. He has failed to demonstrate that any objection to the admission of the genetic tests would have been sustained, i.e., he has identified nothing to suggest that the results should not have been admitted. In addition, he has supplied no evidence that the magistrate who heard his case had a conflict of interest. Finally, he has offered no evidence that his counsel's alleged failure to answer his lengthy letters in specific detail prejudiced him in any manner. Accordingly, Appellant's fifth assignment of error lacks merit. *Page 13 
 Assignment of Error Number Six "THE JUVENILE COURT ABUSED ITS DISCRETION BY DENYING APPOINTED COUNSEL'S MOTION TO WITHDRAW AS APPELLANT'S COUNSEL."
 {¶ 29} In his sixth assignment of error, Appellant has argued that the trial court erred in denying his appointed counsel's motion to withdraw. We disagree.
 {¶ 30} "An indigent defendant * * * must demonstrate `good cause' to warrant substitution of counsel." (Alterations sic.) State v.Williams, 99 Ohio St.3d 493, 2003-Ohio-4396, at ¶ 135, quotingUnited States v. Iles (C.A.6, 1990), 906 F.2d 1122, 1130. "[A] breakdown in the attorney-client relationship will warrant substitution if the breakdown is so severe as to jeopardize the defendant's right to effective assistance of counsel." Williams at ¶ 135, citing State v.Coleman (1988), 37 Ohio St.3d 286, 292. This Court reviews the trial court's decision on a motion to withdraw as counsel under an abuse of discretion standard. Id. An abuse of discretion implies more than an error in judgment; it connotes unreasonable, arbitrary, or unconscionable conduct on the trial court's part. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Under this standard, an appellate court may not merely substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 31} In his argument, Appellant has asserted that the communications breakdown between he and his attorney is evidenced by the fact that his counsel moved to withdraw. Appellant, however, has offered no evidence to support this *Page 14 
circular reasoning. Rather, the trial court record reflects that Appellant's counsel presented each of his arguments to the trial court. Appellant's counsel argued that the genetic testing violated his client's religious freedom, argued that the results must be excluded because the swabs were taken by force, and argued that Appellant should be permitted to attend the proceedings. In short, Appellant's trial counsel performed nearly every action that Appellant requested that he perform, no matter how scurrilous those requests appeared. Moreover, as noted above, we have found that Appellant's trial counsel was not ineffective. Accordingly, we cannot say that the trial court erred when it denied Appellant's trial counsel's motion to withdraw. Appellant's sixth assignment lacks merit.
 Assignment of Error Number Seven "THE JUVENILE COURT VIOLATED APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS BY CONDUCTING THE CHILD SUPPORT DETERMINATION HEARING IN HIS ABSENCE, WHERE APPELLANT DID NOT RECEIVE NOTICE OF THAT HEARING."
 {¶ 32} In his final assignment of error, Appellant has argued that the trial court violated his right to due process. Specifically, Appellant has asserted that the failure to serve on him notice of the hearing which determined the amount of his child support obligation was error. This Court disagrees.
 {¶ 33} "The essence of due process is the requirement that `a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" Mathews v. Eldridge (1976), 424 U.S. 319,348, quoting Joint Anti-Fascist Refugee Commt. v. McGrath (1951), *Page 15 341 U.S. 123, 171-172, (Frankfurter, J., concurring). In its entry overruling Appellant's due process objection, the trial court noted as follows:
 "On March 28, 2005, in a pro se filing, the Defendant directed that `further responses are to be mailed to Nick Trikilis Jumpin Joe's 3420 Manchester Rd. Akron, OH 44319.' On January 30, 2006 the Court notified the Defendant of the March 1, 2006 hearing by serving him at Jumpin Joe's 3420 Manchester Rd. Akron, OH 44319."
Appellant has presented no evidence to contradict that he was properly served at the address he had provided to the court. Accordingly, Appellant's due process rights were not violated. Appellant's seventh assignment of error lacks merit.
 III {¶ 34} Appellant's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27. *Page 16 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 MOORE, J. DICKINISON, J. CONCUR *Page 1