[Cite as *State v. Escobar*, 2021-Ohio-4001.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-200423 |
| | | C-200424 |
| Plaintiff-Appellee, | : | TRIAL NOS. C-20CRB-4924 |
| | | C-20CRB-1961 |
| vs. | : | |
| STEPHEN ESCOBAR, | : | |
| | | *O P I N I O N.* |
| Defendant-Appellant. | : | |


Criminal Appeals From:  Hamilton County Municipal Court

Judgments Appealed From Are:  Affirmed

Date of Judgment Entry on Appeal:  November 10, 2021


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson,* Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1}    Stephen Escobar appeals his two theft convictions after two bench trials.  Raising four assignments of error, Escobar contends that he was denied the effective assistance of counsel because counsel failed to inform him of his right to a jury trial at a time when he could timely request a jury trial, denied his right to counsel in his second trial, and denied his right to fair trials due to judicial bias, and that his convictions were against the manifest weight of the evidence.  For the following reasons, we affirm the judgments of the trial court.

## Pretrial Proceedings

{¶2}    On January 27, 2020, Stephen Escobar was charged with theft by deception for depriving Islam Kelishov of $435 after offering to sell him an iPhone and taking the cash and the iPhone.  While that case was pending, a second theft charge was filed March 8, 2020, alleging that Escobar offered to sell an iPhone to Vianey Santiago for $400 and took the money and the iPhone.  Escobar pled not guilty to both charges.

{¶3}    Escobar filed a discovery request and a request to preserve all recordings. The trial was continued twice at the request of the state because the witnesses did not appear and once at the request of the defense because the state had not provided discovery.  After discovery was provided, Escobar filed a motion to compel a complete photo lineup.

{¶4}    On the morning of trial, both counsel informed the court that they were ready to proceed to trial, and the trial court decided to recess for lunch and begin the trial later that afternoon.  An in-chambers discussion was held before the recess.

{¶5}   When they reconvened, Escobar informed the court that he wanted to change his pleas.  After another in-chambers discussion, no pleas were forthcoming.  Instead, the cases proceeded to trial.

{¶6}   Escobar requested a jury trial, and the state objected to a continuance.  Counsel explained that she was ineffective because she had not filed a jury demand and had not discussed a jury trial with Escobar until that day.  She further explained that after she informed Escobar of the in-chambers discussion, he decided to request a jury trial, and counsel agreed with that decision.  The court denied the request.

{¶7}   Then counsel informed the court that there was an outstanding motion to compel that had not been addressed because the case was going to be dismissed that day.  In discovery, the state had provided one page of a photo lineup, that was numbered one of eight pages.  Escobar had not received the remaining seven pages.  The prosecutor initially stated that he was unable to obtain the missing pages because the officer was on paternity leave.  However, the previous week, the prosecutor informed Escobar that the other pages were unavailable.  The prosecutor informed the court that the state did not have and could not obtain the missing pages.

{¶8}   Escobar's counsel had engaged in an email exchange with the prosecutor and was informed by the prosecutor that no other pages were available.  Escobar's counsel requested that the state not be able to introduce evidence of a photo lineup as a sanction.  Counsel also stated that she had an agreement with the prosecutor to set the matter for a nonjury trial and speak to the officer about the missing pages at that time.  The court concluded that the state had provided all available discovery and overruled the request for a sanction.  The cases proceeded to

bench trials.

## The First Trial

{¶9}   A certified legal intern from the Hamilton County Public Defender's Office, who was under the supervision of Escobar's attorney, gave the opening statement and questioned the witnesses.

{¶10}  During the first trial, both prosecuting witnesses identified Escobar as the person whom they met to purchase the iPhone.  Vianey Santiago Vega testified that she made the arrangements to purchase the phone on OfferUp, and they met at her house.  She identified Escobar as the person she met with for approximately 45 minutes.  Escobar had given the phone to her son, and she gave Escobar $400.  Escobar said that he had to do one more thing to the phone and grabbed the phone from her son.  Then Escobar left with the phone and the money.

{¶11}  On cross-examination, Vega testified that when she went to the police station, she showed the officer the OfferUp profile picture, and the profile picture matched Escobar's BMV photo.  Vega also identified Escobar as the person in the profile picture.

{¶12}  Vega's son, Angel Abdiel Santiago Vega, testified that he was present to help his mother because she is not fluent in English.  He also identified Escobar as the person who took the phone and the money.  Vega estimated that they interacted with Escobar for approximately 20-30 minutes.  After Vega's testimony, the state rested.

{¶13}  During closing remarks, the legal intern argued that both of the state's witnesses had misidentified Escobar as the seller, and that the profile picture was not Escobar.  The court reviewed the profile picture which was a very dark, blurry, black

and white photo less than an inch in size. The court noted that he could not determine whether the photo was of Escobar, but the witnesses identified Escobar as the person who met them.

{¶14} The intern further argued that the in-court identification was insufficient to prove that Escobar was guilty, and that the witnesses had not previously identified Escobar as the culprit.

{¶15} The court asked Escobar's counsel why a motion to suppress on that basis had not been filed. Counsel responded that the profile picture was clearly not Escobar, so the defense did not want to suppress it. Additionally, counsel alleged that the only reason the witnesses identified Escobar in court was because he was the defendant, and that the witnesses misidentified him, a light-skinned black man, as the person in the profile picture. Counsel claimed that the court was asking Escobar to provide a better photograph, which was the state's burden, and that that during the in-chambers discussion, the court had stated that it was up to the defense to question the credibility of the state's witnesses.

{¶16} The court stated that counsel mischaracterized the discussion, and informed counsel that she had "crossed the line." The court further expressed that the case was upsetting and frustrating because the whole premise of the trial was to give the legal intern the opportunity to try the case with the sole purpose of setting it up for an appeal for ineffective assistance of counsel. The court was disturbed that counsel was playing with Escobar's life by subjecting him to jail with the arguments that were made.

{¶17} Then the court found Escobar guilty. In finding Escobar guilty in the first trial, the court explained that both witnesses testified that they interacted with

Escobar for at least 20 minutes and positively identified Escobar as the person who took the iPhone and the money.

## The Second Trial

{¶18} Counsel again requested a jury trial and an opportunity to argue the motion to compel. Both requests were denied. Then the legal intern waived the opening statement.

{¶19} The trial court refused to permit the legal intern to try the case because "you're playing with someone's life, and I think he deserves better representation." Counsel responded that the defense theory was prepared by counsel, the intern, and Escobar. When the trial court reiterated its decision to have counsel try the case instead of the intern, counsel explained that her cross-examination would be identical to the intern's. The court reminded counsel that the intern was only a student, and she was Escobar's counsel. Counsel responded that she had made the decision to allow the intern to sit first chair, and the court was now demanding that she sit first chair.

{¶20} After that exchange, the trial proceeded. The state's sole witness, Islam Kelishov, testified that he had met with Escobar at a Fifth Third Bank to purchase an iPhone. Kelishov identified Escobar as the person with whom he met. He arranged the meeting through Facebook with a female. When he arrived at the bank, he called the woman he had communicated with, and Escobar arrived. Escobar explained that he was the woman's friend. Escobar gave him the iPhone, and he paid Escobar $455. When Kelishov tried to reset the phone, it did not work, so he handed it back to Escobar to fix it. Escobar left with the phone and the money.

{¶21} On cross-examination, Kelishov explained that the two met in the bank lobby and spoke for a few minutes. When Kelishov went to the police station, he was shown photos by the police officer, and he identified Escobar. He further testified that he was 100 percent certain that Escobar was the person with whom he had met.

{¶22} During closing remarks, Escobar's counsel again argued that the witness misidentified Escobar. She further argued that the state did not meet its burden because it did not secure the videotape from the bank lobby, and the police officer did not testify.

{¶23} The trial court found Escobar guilty finding that Kelishov was 100 percent certain that Escobar was the person he met with at the bank, and that Escobar ran off with the iPhone and the $455 that Kelishov had paid him to purchase the phone.

{¶24} Escobar appeals presenting four assignments of error.

### Ineffective Assistance of Trial Counsel

{¶25} In his first assignment of error, Escobar contends that he was denied the effective assistance of counsel because counsel failed to inform him of his right to a jury trial to allow him to timely demand a jury trial.

{¶26} To establish ineffective assistance of counsel, an accused must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the accused. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The failure to make either showing is fatal to the claim. *Id.* at 697. A defendant is prejudiced by counsel's performance if there is a reasonable probability that the outcome of the proceedings would have been different but for the complained-of conduct. *Id.* at 694. "A reasonable probability is

a probability sufficient to undermine confidence in the outcome." *Id.* This court must consider "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

{¶27} "[T]he decision to try a petty offense case to the court rather than a jury lies within the scope of objectively reasonable representation and, without more, 'cannot be deemed deficient.' " *State v. Stroud*, 11th Dist. Ashtabula No. 2017-A-0028, 2018-Ohio-904, ¶ 26, quoting *State v. Todaro*, 11th Dist. Ashtabula No. 2004-A-0002, 2005-Ohio-3400, ¶ 36. In this case, counsel had ample opportunities to request a jury. The cases were set for trial on four different occasions, yet Escobar did not file a jury demand. On the morning of the trials, Escobar expressed his willingness to proceed with a bench trial. Escobar admittedly questioned this strategy after an in-chambers discussion.

{¶28} Even if the failure to file a jury demand was the result of professional negligence, Escobar has not demonstrated that he was prejudiced by the negligence. *See State v. Fitzgerald*, 9th Dist. Summit No. 22381, 2005-Ohio-2411, ¶ 13 ("merely argu[ing] that he could have had a jury trial had his counsel filed a demand notice * * * fails to establish prejudice"); *State ex rel. Maxwell v. Trikilis*, 9th Dist. Medina No. 06CA0071-M, 2007-Ohio-1355, ¶ 27 ("[w]ith respect to a jury demand, Appellant has failed to demonstrate that the result of his bench trial would have been different but for his counsel's failure to make a jury demand"). Escobar has not presented any evidence that the bench trial resulted in an unreliable result due to any bias or prejudice by the trial court. *See Fitzgerald* at ¶ 13.

{¶29} Consequently, we overrule the first assignment of error.

### Sixth Amendment Right to Counsel

**{¶30}** Next, Escobar argues that he was denied his Sixth Amendment right to counsel when the trial court removed the legal intern from the second bench trial.

**{¶31}** The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. "It is well established that the right to counsel of one's choice is an essential element of the Sixth Amendment right to have the assistance of counsel for one's defense." *State v. Lacey*, 8th Dist. Cuyahoga No. 102812, 2016-Ohio-1375, ¶ 15.

**{¶32}** Ohio limits the practice of law to those individuals who have been admitted to the Ohio bar. *See* R.C. 4705.01. The Ohio Supreme Court has created a limited exception for law students to serve as certified legal interns. *See* Gov.Bar R. II. Legal interns are forbidden from making court appearances without a supervising attorney present,[1] *see id.*, and legal interns are not licensed attorneys. *See State v. Vogel*, 6th Dist. Lucas No. L-92-372, 1993 WL 496583, *1 (Dec. 3 1993).

**{¶33}** In this case, Escobar was represented by an attorney from the public defender's office who was assisted by a legal intern. During the first trial, the legal intern, under the supervision of defense counsel, gave an opening statement, cross-examined the witnesses, and made closing remarks. Counsel argued the pretrial motions and moved for a judgment of acquittal. At the conclusion of the intern's remarks, the trial court engaged in a lengthy discussion with counsel. After that exchange, the trial court decided not to allow the intern to conduct the second trial.

**{¶34}** We cannot conclude that Escobar was denied the right to counsel when the court required counsel to try the case instead of the legal intern. Defense

---

[1] The rule contains an exception that is inapplicable to this case.

counsel, a criminal defense attorney from the Hamilton County Public Defender's Office, had represented Escobar for eight months prior to trial, including pretrial hearings and the trial itself. Counsel conferred and consulted with Escobar to prepare for the trial. Because Escobar was represented by counsel throughout the proceedings, we cannot conclude that he was denied the right to counsel.

{¶35} We overrule the second assignment of error.

### Judicial Bias

{¶36} In his third assignment of error, Escobar argues that he was denied his right to a fair trial and due process of law because his trial was tainted by judicial bias due to the court's hostility toward counsel.

{¶37} "It is well settled that a criminal trial before a biased judge is fundamentally unfair and denies a defendant due process of law." *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34, citing *Rose v. Clark*, 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). Where the record demonstrates judicial bias, the remedy is a new trial. *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 2. "In determining whether purported judicial bias resulted in a due process violation, we presume that a judge is unbiased and unprejudiced in the matters over which he or she presides, and the appearance of bias or prejudice must be compelling in order to overcome the presumption." (Citations omitted.) *Cleveland v. Goodman*, 8th Dist. Cuyahoga No. 108120, 2020-Ohio-2713, ¶ 18.

{¶38} Comments by the trial court "that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127

10

L.Ed.2d 474 (1994). Rather, the remarks must "reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.*

{¶39} Here, the trial court was admittedly troubled and frustrated by defense counsel's strategy and arguments. Despite the court's frustration, there is no indication that the trial court ruled unfairly or made any rulings that were unsupported by the record. In finding Escobar guilty in the first trial, the court explained that both witnesses testified that they interacted with Escobar for at least 20 minutes and positively identified Escobar as the person who took the iPhone and the money. At the conclusion of the second trial, the court found that Kelishov testified that he was 100 percent certain that Escobar was the person he met in the bank lobby, and that Escobar ran from the bank with the iPhone and the $455 that Kelishov had paid him to purchase the phone.

{¶40} The trial court's rulings were supported by the testimony at the trials, and this record reveals no evidence to overcome the presumption that the trial court was not biased or prejudiced against Escobar.

{¶41} Accordingly, we overrule the third assignment of error.

### The Manifest Weight of the Evidence

{¶42} In his fourth assignment of error, Escobar claims that the judgments of the trial court were contrary to the manifest weight of the evidence.

{¶43} When considering a challenge to the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a

manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶44} Generally, credibility is an issue for the trier of fact to resolve. *See State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001). "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047,¶ 20, citing *State v. Konya*, 2d Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997).

{¶45} Escobar contends that the convictions were against the manifest weight of the evidence because the in-court identifications were unreliable due in part to an unduly suggestive out-of-court identification process. We first note that the record does not contain any evidence to support an unduly suggestive out-of-court identification process.

{¶46} As previously discussed, all three witnesses identified Escobar in court as the person with whom they had met, and testified that Escobar took the phone and the money that they had paid him for the phone. In finding Escobar guilty, the trial court found their testimony to be credible. Because credibility is an issue for the trier of fact to resolve, we cannot say that the court clearly lost its way and created a manifest miscarriage of justice.

**{¶47}** We overrule the fourth assignment of error.

## Conclusion

**{¶48}** Having overruled Escobar's four assignments of error, we affirm the judgments of the trial court.

Judgments affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.