[Cite as *State v. Terry*, 2025-Ohio-1195.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


|                         |   |                                        |
|-------------------------|---|----------------------------------------|
| STATE OF OHIO,          | : | APPEAL NO.  C-240381                   |
|                         |   | TRIAL NO.   C/24/CRB/4878              |
| Plaintiff-Appellee,     | : |                                        |
|                         |   |                                        |
| vs.                     | : |                                        |
|                         |   | *O P I N I O N*                        |
| JADA TERRY,             | : |                                        |
|                         |   |                                        |
| Defendant-Appellant.    | : |                                        |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: April 4, 2025


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender, for Defendant-Appellant.

**KINSLEY, Presiding Judge.**

{¶1}   Defendant-appellant Jada Terry appeals her conviction for obstructing official business.  In the first of three assignments of error, Terry challenges the sufficiency and weight of the evidence supporting her conviction.  Her second assignment of error levies a due process claim concerning the trial judge's failure to disqualify himself from presiding over the proceedings.  The third assignment of error addresses the court's failure to afford Terry the right of allocution at sentencing.  For reasons we explain in this opinion, we affirm the finding of guilt but reverse Terry's sentence because she was not given an opportunity to speak before the trial court's sentence was pronounced.  We accordingly remand the matter to the trial court for resentencing.

### Factual and Procedural History

{¶2}   Following a traffic stop on March 24, 2024, Terry was charged with obstructing official business in violation of R.C. 2921.31(A), a misdemeanor of the second degree.  She elected to try her case to the trial court.

{¶3}   At trial, the State presented the testimony of Officer Donald Jordan of the Woodlawn Police Department, as well as footage from his body-worn camera.  Jordan was the State's only witness, and Terry presented no evidence of her own.  Thus, all facts surrounding the traffic stop are derived from Jordan's statements on the stand and his body-worn camera footage.

{¶4}   Jordan testified to observing a vehicle on Sheffield Road travelling in excess of the speed limit.  Inside the car were a female driver, a male passenger, and children in the back seat.  Jordan used the vehicle's license plate number to access the registration information, which returned to a person named Jada Terry.  The registration included Terry's name, date of birth, address, Social Security number, and

photograph, as well as the make and model of the registered vehicle.

{¶5} After accessing this information, Jordan initiated a traffic stop. The footage from Jordan's body-worn camera captured his encounter with the driver, who indicated that she was not in possession of her driver's license. She instead identified herself to Jordan as "Delilah Terry" and provided him with a date of birth that did not correspond to the date of birth for Jada Terry.

{¶6} As Jordan explained in his testimony, he returned to his cruiser and entered the name and birthdate that Terry provided into his computer. While the information did return to a Delilah Terry, Jordan could tell from the photographs he accessed of both people that the driver was actually Jada and not Delilah. From this, Jordan surmised that Terry had provided him with her sister's information rather than her own.

{¶7} Because Terry provided false information, Jordan conveyed his intent to arrest her to another officer who had arrived on scene. Jordan then ran the information for Terry's passenger before returning to the vehicle to arrest her.

{¶8} As reflected on the body-worn camera footage, Jordan asked Terry to step out of the vehicle. She calmly refused, first asking why she had to step out. The officer repeated his order numerous times without explaining its basis to Terry. Terry repeatedly expressed her intent to comply if Jordan would provide a reason for his order. Jordan attempted to grab Terry's arm to remove her from the car, but she pulled her arm away. Moments later, he was successful at securing her arm and held onto it while issuing additional commands to step out. Terry persisted in requesting an explanation. When Jordan released her arm, Terry got out of the car. Nearly three minutes elapsed between the officer first ordering Terry to get out of the car and the time she stepped out of the vehicle.

**{¶9}**   The body-worn camera footage reflects that Terry was cooperative once out of the vehicle.  She admitted that she gave Jordan her sister's name because her driver's license was suspended.  She apologized for her actions and indicated her willingness to accept the consequences.  She explained that she did not want to be arrested in front of her young children, one of whom she reported suffered from disabilities.

**{¶10}** After Jordan's testimony concluded, the trial court found Terry guilty as charged.  The court imposed a suspended sentence of 90 days in jail and six months of community control.  The sentence was stayed pending appeal.

### *Analysis*

### *Sufficiency and Manifest Weight of the Evidence*

**{¶11}**  In her first assignment of error, Terry contends that her conviction for obstructing official business was not supported by sufficient evidence that she engaged in an affirmative act or that her actions hampered or impeded Jordan in performing his official duties.  She further argues that her conviction was against the manifest weight of the evidence in this regard.  We disagree.

**{¶12}** An assessment of the sufficiency of the evidence supporting a conviction requires us to ask "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  By contrast, a manifest-weight challenge requires us to independently "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 2020-Ohio-4283, ¶ 16 (1st Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 388 (1997).

{¶13} The offense of obstructing official business is proscribed by R.C. 2921.31(A). The provision states that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." The essential elements of obstructing official business are therefore that the defendant "(1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the performance of the public official's duties." *In re S.J.*, 2023-Ohio-3441, ¶ 21 (1st Dist.), quoting *State v. Brantley*, 2022-Ohio-597, ¶ 16 (1st Dist.).

### A. Affirmative Act

{¶14} An affirmative act is an essential element of the offense of obstructing official business under R.C. 2923.31(A). *State v. Grice*, 2009-Ohio-372, ¶ 9 (1st Dist.). The phrase "affirmative act" has been defined as "any conduct, physical or verbal, that hampers or impedes the officer in the performance of his or her duties." *State v. Carrion*, 2023-Ohio-4386, ¶ 19 (1st Dist.). The failure to act will not suffice. *Id.*, quoting *S.J.* at ¶ 24. As we have observed, generally speaking, the "[m]ere failure to obey an officer's order does not give rise to obstruction." *State v. Carroll*, 2005-Ohio-4048, ¶ 14 (1st Dist.).

{¶15} In considering whether a person's conduct constitutes an affirmative act under R.C. 2923.31(A), "officers may consider the totality of the events and need not point to a single act that rises to the level of obstruction." *In re M.H.*, 2021-Ohio-1041, ¶ 18 (1st Dist.), quoting *Lyons v. Xenia*, 417 F.3d 565, 574 (6th Cir. 2005). Even in isolation, one such act that can constitute an affirmative act in an obstruction of official

5

business case is providing officers with false information. *State v. Lazzaro*, 1996-Ohio-397, syllabus. Taking physical action to avoid an officer's attempt to effectuate an arrest, such as tucking one's wrists to avoid the placement of handcuffs, can also satisfy the affirmative act requirement. *See, e.g., Carrion* at ¶ 19-20.

**{¶16}** Terry argues that she did not engage in an affirmative act because her conduct merely amounted to inaction. She contends that, upon being ordered by Jordan to get out of her car, she simply refused. But Terry ignores the totality of her conduct, which included providing a false name and date of birth to the officer and physically pulling away from his attempt to forcibly remove her from her car. She also engaged in a three-minute-long conversation with him about his purpose in detaining her which, while largely polite in tone, still went beyond merely declining to step out of the vehicle.

**{¶17}** We therefore hold that the totality of Terry's conduct constituted an affirmative act for which the State presented sufficient evidence at trial. And we reject Terry's manifest weight challenge for similar reasons. Terry does not identify any evidence against which we should weigh the evidence of her conduct presented by the State. Because the State proved that she provided false information to a police officer, pulled away from his physical attempt to restrain her, and engaged in an approximately three-minute verbal dialogue with him that surpassed the simple refusal to obey a command, her obstructing official business conviction was not against the manifest weight of the evidence on this element.

### B. *Hamper or Impede*

**{¶18}** Terry next challenges the weight and sufficiency of the evidence with regard to whether she hampered or impeded Jordan in the performance of his official duties. An act hampers or impedes a law enforcement officer when it results in a

"substantial stoppage" of the officer's progress. *In re R.B.*, 2021-Ohio-3749, ¶ 18 (1st Dist.). "Substantial stoppage" is not denoted by any particular period of time. *Id.* at ¶ 19. Rather, it contemplates a delay that occurs because of the defendant's act. *Id.*, quoting *Grice*, 2009-Ohio-372, at ¶ 12 (1st Dist.).

**{¶19}** The State presented sufficient evidence that Terry's actions, taken in concert, hampered Jordan's performance of his duties. Jordan's body-worn camera footage reveals that he required additional time to compare the false information Terry provided against her actual name and photograph. He also communicated to his fellow officer that he planned to arrest Terry, rather than send her on her way with a ticket, because of her decision to provide a false name and birthdate. When Terry pulled away from Jordan and engaged him in a lengthy verbal back-and-forth, she delayed his ability to effectuate that arrest. Taken together, these acts sufficiently hampered and impeded Jordan in the performance of his duties to constitute obstructing official business. *See Carrion*, 2023-Ohio-4386, at ¶ 19 (1st Dist.); *State v. Stancato*, 2024-Ohio-2632, ¶ 20 (5th Dist.) (defendant's argumentative and evasive behavior combined with his refusal to exit vehicle were overt acts that stalled and escalated the investigation in a manner which supported conviction).

**{¶20}** The manifest weight of the evidence also supports Terry's conviction with regard to the hamper-or-impede element. This is not a case where the trier of fact clearly lost its way in convicting Terry.

**{¶21}** Terry's first assignment of error is accordingly overruled.

### *Impartiality of the Trial Court Judge*

**{¶22}** In her second assignment of error, Terry contends she was denied a fair trial because the trial judge exhibited bias during the proceedings, thereby violating her due process rights. In support, she alleges that the trial judge all but rendered a

guilty verdict during an in-chambers discussion after the footage from Jordan's body-worn camera was played in open court, but before the remainder of the evidence was presented at trial.

**{¶23}** The transcript confirms that the judge summoned the attorneys to his chambers at that point in the trial. Once in chambers, the judge questioned why the matter was being tried. Defense counsel and the judge then discussed potential legal defenses Terry intended to raise and relevant caselaw supporting those arguments. At the close of the discussion, the trial resumed.

**{¶24}** "Due process requires that a criminal defendant be tried before an impartial judge." *State v. Jackson*, 2016-Ohio-5488, ¶ 43. Where the record demonstrates that the judge exhibited bias, the appropriate remedy is a new trial. *Id.* The Ohio Supreme Court has defined "judicial bias" as "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or [her] attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts." *Id.* at ¶ 33, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus.

**{¶25}** The demonstration of judicial bias is a high bar. "[W]e presume that a judge is unbiased and unprejudiced in the matters over which he or she presides, and the appearance of bias or prejudice must be compelling in order to overcome the presumption." *State v. Escobar*, 2021-Ohio-4001, ¶ 37 (1st Dist.), quoting *Cleveland v. Goodman*, 2020-Ohio-2713, ¶ 18 (8th Dist.). "Comments by the trial court 'that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Escobar* at ¶ 38, quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994). In order to surmount the high bar,

judicial remarks must "reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Escobar* at ¶ 38, citing *Liteky* at 555.

**{¶26}** Terry maintains that the judge's remarks in chambers showed that he formed a premature opinion on the merits of the case based solely upon the body-worn camera footage, even before counsel had the opportunity to cross-examine the witness. She contends that the judge did not deviate from that biased opinion for the duration of the proceedings. The issue is subject to plain error review as Terry lodged no objection to the judge's continued presiding over the proceedings following the in-chambers discussion. *See State v. Dixon*, 2025-Ohio-326, ¶ 33 (3d Dist.); *see also* Crim.R. 52(B).

**{¶27}** Viewing the transcript as a whole, there is nothing to suggest that the trial court harbored such a high degree of antagonism or favoritism toward either party or their counsel that the trial was unfair. It is true that the judge questioned the need for a trial during the in-chambers discussion and that he and counsel debated the law and the merits of the case at that time. Trial then resumed, and the parties were permitted to present evidence and submit arguments. The record reflects that the trial court heard the testimony and received the evidence after the discussion in question as it would in any other proceeding. Only after hearing all of the evidence and giving the parties an opportunity to argue their respective positions in closing argument did the trial court render its verdict. In doing so, the trial court cited case law from this court, evidencing an intent to correctly apply the law to the facts of Terry's case.

**{¶28}** Under these circumstances, we cannot say that the trial judge exhibited any level of bias sufficient to call the fairness of the trial into question. Terry's second assignment of error is therefore overruled.

### *Right of Allocution*

**{¶29}** In her third assignment of error, Terry argues that resentencing is required because she was denied her right of allocution. The State concedes the error.

**{¶30}** The right of allocution is encompassed by Crim.R. 32(A)(1). The rule requires that the sentencing court personally address the defendant and inquire whether she wishes to make a statement on her own behalf or present any information in mitigation of punishment. The right of allocution is personal to the defendant. *State v. McConnaughey*, 2021-Ohio-3320, ¶ 45 (1st Dist.). It is not enough to permit counsel to speak on the defendant's behalf. *State v. Osume*, 2015-Ohio-3850, ¶ 23 (1st Dist.), citing *State v. Green*, 90 Ohio St.3d 352, 359-360 (2000).

**{¶31}** As this court has observed, "[a] Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *McConnaughey* at ¶ 45, quoting *Green* at 359-360. Accordingly, trial courts are tasked with painstakingly adhering to the requisites of Crim.R. 32. *McConnaughey* at ¶ 46, quoting *Green* at 359. If a trial court imposes sentence without first having given the defendant the opportunity to speak, resentencing is mandatory unless the error is invited or harmless. *McConnaughey* at ¶ 46, citing *State v. Campbell*, 90 Ohio St.3d 320 (2000), paragraph three of the syllabus.

**{¶32}** A reading of the transcript confirms that the trial court solicited mitigation from defense counsel but did not afford Terry her right of allocution before imposing sentence. Nor do we find present any unusual circumstances that counsel in favor of deeming the error harmless. *Osume* at ¶ 24, citing *State v. Reynolds*, 80 Ohio St.3d 670, 684 (1998). Because Terry was not afforded the opportunity to speak in mitigation before the trial court sentenced her, the matter must be remanded for resentencing.

**{¶33}** Terry's third assignment of error is sustained.

### *Conclusion*

**{¶34}** The trial court's finding of guilt was supported by sufficient, credible evidence, and the record does not establish that Terry was denied due process as a result of the trial judge's failure to remove himself from the case. Accordingly, her first and second assignments of error are overruled. Because Terry was denied her right of allocution, her third assignment of error is sustained, the sentence is reversed, and the matter is remanded for resentencing.

Judgment affirmed in part, reversed in part, and cause remanded.

**CROUSE** and **NESTOR, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.