[Cite as *State v. Haynes*, 2015-Ohio-3432.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-140205 |
| | | TRIAL NO. B-1303030 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| DEMETRIUS HAYNES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 26, 2015

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Melynda J. Machol,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Ravert J. Clark*, for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

**SYLVIA SIEVE HENDON, Presiding Judge.**

{¶1}   Demetrius Haynes appeals the judgment of the Hamilton County Common Pleas Court denying his motion to suppress evidence and convicting him of trafficking in and possession of heroin.

### *The Suppression Hearing*

{¶2}   At the hearing on the motion to suppress, the state presented evidence that Cincinnati police had received numerous complaints of drug activity occurring in the parking lot of a Deveroes clothing store in the Camp Washington area.  Over the course of several months, the police had made numerous arrests in the lot.

{¶3}   On May 20, 2013, Sergeant Ryan Hudson, a member of the police department's Safe Streets Unit, was conducting undercover surveillance when he saw Haynes drive into the Deveroes lot in a white car with an Illinois license plate. Haynes had one passenger in his car.  Shortly thereafter, a red car with an Indiana license plate arrived in the lot.

{¶4}   According to Sergeant Hudson, Haynes's passenger,  later identified as Jonas Whorton, got out of Haynes's car, "sort of took a look left, looked right, kind of looked all over the place," and then approached the red car.  Then Whorton reached into the passenger side of the red car and dropped something on the seat.  The driver of that car reached across and handed Whorton what appeared to be currency. Whorton walked away and got into the passenger side of Haynes's car.  Then both cars left the parking lot.

{¶5}   Sergeant Hudson testified that Haynes had remained in the driver's seat of his car with the engine running for the two to three minutes that Haynes was

in the lot. He said that Haynes had "sort of kept an eye on * * * what was going on, the comings and goings of the lot."

{¶6} Based upon his experience and training, Sergeant Hudson believed that Whorton and the driver of the red car had engaged in a drug sale. He put out a radio broadcast describing what he had seen, including a description of the individuals, and indicated that there had been a possible drug transaction.

{¶7} Cincinnati police officer Deon Mack was working in conjunction with the undercover officers involved in the surveillance of drug activity. He testified that, after hearing Sergeant Hudson's broadcast, he stopped Haynes's car, which had only traveled about a tenth of a mile from the Deveroes lot. Sergeant Hudson drove near the traffic stop to confirm that the correct vehicle had been stopped.

{¶8} Officer Mack approached the driver's side of Haynes's car and saw a small digital scale on the driver's side of the car's center console, to the left of the gear shift. The scale had residue on it.

{¶9} Officer Mack testified that he had been a police officer for 13 years, and that "the vast majority" of his career had involved drug investigations. His training and experience had included the identification of drugs, scales, and scales with residue on them.

{¶10} After questioning Haynes about his identification, Officer Mack took Haynes into custody. As Officer Mack patted him down, he felt a solid object that was larger than a golf ball inside Haynes's pants. Officer Mack did not know what the object was, but he testified, "I could compare it to a few things. I could compare it to a large rock or a very small firearm."

{¶11} After the officer asked Haynes what the object was, Haynes removed the object from his pants and dropped it to the ground. The object was a large amount of heroin.

{¶12} Haynes testified at the hearing. According to him, both he and Whorton had gotten out of his car in the parking lot. Haynes said that he had walked into the Deveroes store while Whorton walked into a convenience store that was several doors away. Haynes said that several minutes later, Whorton joined him in the clothing store. The two of them spoke to a salesperson and then left the store.

{¶13} According to Haynes, he had driven a short distance from Deveroes when police pulled him over. When Haynes asked why he had been stopped, Officer Mack said, "[D]rug investigation * * * [Your passenger] sold us something, we got the person he sold to." At that point, other officers took Whorton out of the car.

{¶14} Haynes acknowledged that he had had a scale in the car, but he said that Officer Mack could not have seen it because it was in a cup holder in the car's console, along with some keys.

{¶15} Haynes testified that Officer Mack got him out of the car and patted him down. When the officer patted Haynes's pockets, he said, "What is this?" and Haynes told him that it was $8,500 in cash. Then the officer did a pat-down of Haynes's legs and crotch and felt the heroin. According to Haynes, the officer threatened to harm him if he did not remove the item, so Haynes pulled the heroin out of his pants and dropped it on the ground.

{¶16} Following the hearing, the trial court denied Haynes's motion to suppress. Haynes entered no-contest pleas to trafficking in heroin and possession of

heroin, both felonies of the second degree. The trial court found him guilty and sentenced him to two years in prison.

{¶17} On appeal, Haynes argues that the traffic stop and the pat-down were illegal, and therefore, the trial court erred by overruling his motion to suppress. Appellate review of a ruling on a motion to suppress involves mixed questions of law and fact. *See State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. A reviewing court must accept the trial court's findings of fact if they are supported by competent and credible evidence. *Id.* But the reviewing court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. *Id.*; *State v. Ward*, 1st Dist. Hamilton No. C-140721, 2015-Ohio-2260, ¶ 16.

{¶18} In this case, the trial court did not make any findings of fact in its decision denying Haynes's suppression motion. Consequently, we must review the record to determine whether sufficient evidence exists to support the trial court's decision. *See State v. Jones*, 1st Dist. Hamilton No. C-130359, 2014-Ohio-3110, ¶ 10, citing *State v. Shields*, 1st Dist. Hamilton No. C-100362, 2011-Ohio-1912, ¶ 9.

{¶19} In his first assignment of error, Haynes argues that police lacked reasonable suspicion to believe that he was engaged in criminal activity sufficient to stop his vehicle or to search him. Consequently, he contends, any evidence obtained by police following the stop should have been suppressed.

{¶20} The right of citizens to be free from unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and by Article I, Section 14, Ohio Constitution. Although the stopping of an automobile by police constitutes a seizure, the stop is constitutionally valid if the

police had a reasonable and articulable suspicion that its occupants were involved in criminal activity. *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Navarette v. California*, ___ U.S. ___, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014); *Maumee v. Weisner*, 87 Ohio St.3d 295, 299, 720 N.E.2d 507 (1999). Reasonable suspicion is a less demanding standard than probable cause. *See State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23; *State v. Erkins*, 1st Dist. Hamilton No. C-110675, 2012-Ohi0-5372, ¶ 32. A police officer who has probable cause necessarily has a reasonable suspicion that a person has committed a crime. *Mays* at ¶ 23. Therefore, probable cause is a complete justification for a traffic stop. *Mays* at ¶ 23.

{¶21} Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 245, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), fn. 13. If a police "officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). If a police officer has received information from a police radio broadcast that gives him reasonable grounds to believe that a felony has been committed, the officer has probable cause to make an arrest. *See State v. Fultz*, 13 Ohio St.2d 79, 234 N.E.2d 593 (1968), paragraph two of the syllabus.

{¶22} In this case, we hold that Officer Mack had reasonable grounds to believe that Haynes had committed a criminal offense. The area under surveillance by the police was known for drug activity, and numerous arrests had been made there in recent months. An undercover police officer testified that Haynes's

passenger had engaged in behavior consistent with a drug sale, that Haynes had acted as an apparent lookout as he remained seated, and that Haynes had driven off as soon as his passenger returned. The undercover officer's radio broadcast describing the drug-sale activity provided probable cause for Officer Mack to stop Haynes's car and arrest him. *See State v. Morrison*, 1st Dist. Hamilton No. C-120406, 2013-Ohio-928, ¶ 12. Moreover, Officer Mack's observation of a digital scale with residue on it further added to a reasonable belief that a felony had been committed. *Id.*

{¶23} Consequently, Officer Mack had probable cause to arrest Haynes. Once he had probable cause to arrest Haynes, he was authorized to conduct a warrantless search of his person incident to his arrest. *See Davis v. United States*, ____ U.S. ____, 131 S.Ct. 2419, 2424, 180 L.Ed.2d 285 (2011), citing *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Consequently, we overrule the first assignment of error.

{¶24} In his second assignment of error, Haynes argues that his constitutional rights were violated because the pat-down by Officer Mack was not based upon a reasonable suspicion that he was armed. Under *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may briefly stop a person whose suspicious conduct leads him to believe that the person is engaged in criminal activity, and the officer may conduct a pat-down search of the person for weapons if the officer is justified in believing that the person may be armed and dangerous. This "protective search -- permitted without a warrant and on the basis of reasonable suspicion less than probable cause -- must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the

officer or others nearby.' " *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), citing *Terry*, 392 U.S. at 26, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶25} However, as we have held, Officer Mack's search of Haynes was a lawful search following an arrest. A search incident to arrest allows an officer to conduct a full search of the arrestee's person, and that search is not limited to the discovery of weapons, but may include evidence of a crime as well. *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Therefore, Officer Mack properly conducted a full search of Haynes. We overrule the second assignment of error.

{¶26} In his third assignment of error, Haynes argues that his constitutional rights were violated when the police stopped and detained him for a period of time exceeding what was necessary to conduct a *Terry* stop of the passenger in his car. He contends that, because police lacked reasonable suspicion to believe that he was engaged in criminal activity, he should not have been detained or searched once the arrest of his passenger was completed. Once again, as we have explained, Officer Mack's arrest of Haynes was supported by probable cause that he had engaged in illegal drug activity. Consequently, the search of his person immediately upon his arrest was constitutionally valid. We overrule the third assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**FISCHER** and **MOCK, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.