[Cite as *State v. Carrion*, 2023-Ohio-4386.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230070 |
| | | TRIAL NO. 23CRB-681A |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| RAYMOND CARRION, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: December 6, 2023

*Emily Smart Woerner*, City Soliciter*, William T. Horsley*, Chief Prosecuting Attorney, and *Danielle Ferris*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah E. Nelson*, Assistant Public Defender,  for Defendant-Appellant.

**KINSLEY, Judge.**

**{¶1}** Following a jury trial in the Hamilton County Municipal Court, defendant-appellant Raymond Carrion was convicted of one count of obstruction of official business in violation of R.C. 2921.31, a misdemeanor of the second degree.

**{¶2}** In his first assignment of error, Carrion argues that the state failed to present sufficient evidence to support his conviction. In his second assignment of error, Carrion argues that his conviction is against the manifest weight of the evidence. For the reasons set forth below, we affirm Carrion's conviction.

## *Factual and Procedural History*

**{¶3}** The incident which forms the basis for this appeal occurred on January 12, 2023, when Officers Justin Bittinger and Robert Dews arrived at Carrion's home to serve him with a felony arrest warrant for a parole violation from Kentucky.

**{¶4}** At trial, Bittinger testified that when he arrived at Carrion's home, he knocked on the front door twice. When no one responded, Bittinger opened the unlocked door. Carrion then appeared in the opening from the hallway, and Bittinger asked him to step out from the hallway. Carrion asked Bittinger, "Who are you," and asked why Bittinger was at his home.

**{¶5}** Bittinger informed Carrion that police were there to serve an arrest warrant for a parole violation. Bittinger then told Carrion to "come here," but Carrion did not comply. Bittinger then further entered Carrion's home and made physical contact with Carrion.

**{¶6}** As Bittinger approached Carrion, he asked Carrion to put his hands behind his back. Carrion complied with respect to one hand, which Bittinger was able to hold, but Carrion placed his other hand against the wall. A scuffle then ensued.

2

Bittinger grabbed Carrion's hand from the wall in an attempt to arrest him. Carrion spun around, and his hand from the wall was freed from Bittinger's grip. Aided by Dews, who had subsequently entered the house, Bittinger then took Carrion to the ground to handcuff him.

{¶7} Bittinger testified that when he tried to get Carrion on the ground, Carrion was tucking his hands, not placing them behind his back. Bittinger testified that while Carrion was on the ground, he was tensing his muscles, after which Bittinger maced him. Bittinger further testified that it took three officers—himself, Dews, and another officer who arrived to assist—to detain Carrion. Ultimately, medics were called, and Carrion was placed inside the police vehicle without further incident.

{¶8} Dews testified that when the officers entered Carrion's home, they did not immediately announce themselves as police officers. Dews heard Carrion ask the officers to "hold on" because he had just woken up. Dews testified that right after Carrion said this, Bittinger "guided" him to the ground. Dews testified that while Carrion was on the ground being asked to put his hands behind his back, both he and another officer were holding Carrion's hands. Dews heard Carrion say that he was trying to put his hands behind his back, even though one of the officers had his hand before Carrion was maced. Dews acknowledged that this was preventing Carrion from placing his hands behind his back.

{¶9} The entire encounter, from when Bittinger opened the door until officers had Carrion in handcuffs, lasted approximately one minute and 45 seconds. The state presented body-worn camera footage at trial that corroborated Bittinger's and Dews's accounts of Carrion's arrest.

{¶10} Carrion testified on his own behalf at trial. He explained that he was on parole in Kentucky and was only allowed to cross state lines for an emergency regarding his daughter. On the day of the incident, Carrion was at the house in Cincinnati because his daughter was sick. He explained that he woke up to someone knocking at his door, and when he rounded the corner, he saw people standing in the doorway, but could not make them out due to a flashlight being shined. Carrion testified that he was surprised that the officers were there, because he was in communication with his parole officer and was usually informed if problems arose. He explained that when Bittinger took one of his hands and placed it behind his back, Carrion put his other hand on the wall and continued to ask the officers why they were there, to which he received no response. Carrion testified that one to two seconds later, he was on the floor. Carrion told the officers multiple times that he was going down, that he had a broken shoulder, and that he was unable to put his hand behind his back because one of the officers had it pinned to the ground. Bittinger then maced Carrion and the third officer said he was going to "tase the sh*t out of [Carrion]" but did not end up tasing him. Carrion testified that he had a "burning sensation across my whole face, my eyes, and my mouth. Couldn't breathe, soreness on my dislocated shoulder[,]" as a result of the incident.

{¶11} Carrion was charged with one count of obstructing official business, a misdemeanor of the second degree, and one count of resisting arrest, a misdemeanor of the second degree. The jury convicted Carrion of obstruction of official business in violation of R.C. 2921.31, but acquitted him of resisting arrest. The trial court sentenced Carrion to 90 days incarceration with credit for 25 days and ordered him to pay a $250 fine plus court fees.

**{¶12}** Carrion timely appealed.

### *Sufficiency of Evidence*

**{¶13}** Carrion raises two assignments of error on appeal. First, Carrion argues that the state failed to present sufficient evidence to support his conviction. Second, Carrion argues that his conviction is against the manifest weight of the evidence.

**{¶14}** We begin with Carrion's first assignment of error regarding the sufficiency of the evidence.

**{¶15}** When reviewing a challenge to the sufficiency of the evidence, we examine the evidence admitted at the trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶16}** R.C. 2921.31(A) defines the crime of obstruction of official business as follows: "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." Consistent with this statute, to sustain a conviction for obstruction of official business, the state is required to prove that the defendant: "(1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the

performance of the public official's duties." *In re S.J.*, 1st Dist. Hamilton Nos. C-220221, C-220222, C-220223 and C-220224, 2023-Ohio-3441, ¶ 21.

{¶17} Carrion does not challenge the sufficiency of the evidence presented to show that he acted without privilege and with purpose to prevent, obstruct, or delay the performance of an official act. Thus, we only address whether there was sufficient evidence of an affirmative act and that Carrion's conduct hampered or impeded the performance of the police officers' official duties. We conclude that there was.

### *Affirmative Act*

{¶18} Carrion first asserts that he did not engage in an affirmative act. He alleges that placing his hand on the wall was not an affirmative act because it was done without the purpose of preventing officers from arresting him. He further alleges that his other conduct, including spinning away from Bittinger and struggling with officers, did not constitute an affirmative act because officers were physically controlling his body and because he was not attempting to walk away or otherwise evade arrest.

{¶19} "[A] violation of [the obstruction] statute requires an affirmative act." *State v. Grice*, 180 Ohio App.3d 700, 2009-Ohio-372, 906 N.E.2d 1203, ¶ 9 (1st Dist.). An affirmative act is defined as any conduct, physical or verbal, that hampers or impedes the officer in the performance of his or her duties. *State v. Wellman*, 173 Ohio App.3d 494, 2007-Ohio-2953, 879 N.E.2d 215 (1st Dist.). "A person cannot be guilty of obstructing official business by doing nothing or failing to act. Further, mere failure to obey an officer's order does not give rise to obstruction." (Internal citations omitted.) *In re S.J.* at ¶ 24. Further, "the nature of a defendant's conduct must be such that a trier of fact can reasonably infer that the accused intended his conduct to

6

obstruct official business." *In re Payne,* 1st Dist. Hamilton No. C-040705, 2005-Ohio-4849, ¶ 15.

**{¶20}** Here, the state presented ample evidence that Carrion engaged in an affirmative act, going beyond the mere failure to act, within the meaning of the obstruction-of-official-business statute. First, the evidence demonstrated that Carrion placed his hand on the wall and asked the officers to "hold on" while they were attempting to arrest him. Second, Bittinger testified that Carrion tucked his wrists and tensed his muscles to avoid the placement of handcuffs. While these acts were brief in duration, reviewing the evidence in the light most favorable to the state, we find Carrion's conduct sufficient to establish that an affirmative act occurred.

### *Hamper and Impeded*

**{¶21}** Carrion next asserts that he did not hamper and impede the officers in their official duties, given that it took less than two minutes for him to be arrested after officers entered his home.

**{¶22}** Although "hamper" and "impede" are not defined in R.C. 2921.31, this court has stated that an act violates the statute when it creates a "substantial stoppage" of the officers' progress. (Internal quotation marks omitted.) *In re R.B.,* 2021-Ohio-3749, 179 N.E.3d 749, ¶ 18-19 (1st Dist.). This "substantial stoppage" requirement is not defined by any particular period of time, but rather must merely occur because of the defendant's act. *Id.*

**{¶23}** Bittinger testified that he was obstructed and delayed in arresting Carrion when Carrion put "his hands on the wall trying to push away." Dews testified that officers were impeded and delayed by Carrion failing to give his hands to the

officers when asked. Dews also testified that it took three officers to arrest Carrion rather than the usual one.

**{¶24}** Therefore, however slight the hampering and impeding may have been, when reviewing the record in a light most favorable to the state, there is evidence to show that Carrion's actions hampered and impeded the officers in effectuating the arrest.

**{¶25}** Therefore, we overrule Carrion's first assignment of error.

### *Manifest Weight*

**{¶26}** In his second assignment of error, Carrion challenges his conviction under the manifest-weight-of-the-evidence standard.

**{¶27}** When reviewing a challenge to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). Unlike our review of a sufficiency challenge, review of a manifest-weight challenge requires us to independently "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 1st Dist. Hamilton No. C-190508, 2020-Ohio-4283, ¶ 16, citing *Thompkins* at 397. However, we will reverse the trial court's decision to convict and grant a new trial only in " 'exceptional cases in which the evidence weighs heavily against the conviction.' " *State v. Sipple*, 1st Dist. Hamilton No. C-190462, 2021-Ohio-1319, ¶ 7, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

*Purpose*

**{¶28}** Carrion argues that his conviction was against the manifest weight of the evidence solely as to one element of obstruction of official business: purpose to prevent, obstruct, or delay a public official.

**{¶29}** "[T]he nature of a defendant's conduct must be such that a trier of fact can reasonably infer that the accused intended his conduct to obstruct official business. To constitute obstruction, a defendant must act with purpose, meaning it is his or her specific intention to cause a certain result or engage in a conduct of a certain nature." (Internal citation and quotation marks omitted.) *In re S.J.*, 1st Dist. Hamilton Nos. C-220221, C-220222, C-220223 and C-220224, 2023-Ohio-3441, ¶ 26.

**{¶30}** With regard to purpose, the evidence shows that Carrion placed his hand on the wall and asked the officers to "hold on." Carrion explained he had just awakened and wanted more time before being arrested. While an understandable human reaction, Carrion's statement offers a glimpse into his state of mind, which was a desire to delay his arrest. Given this evidence, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in finding that Carrion acted purposely in hampering or impeding his arrest.

**{¶31}** Therefore, we overrule Carrion's second assignment of error.

### Conclusion

**{¶32}** For the reasons set forth in this opinion, we affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **BOCK, J.,** concur.

Please note:

9

The court has recorded its own entry on the date of the release of this opinion.