[Cite as *State v. King*, 2024-Ohio-5459.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| STATE OF OHIO, | : | APPEAL NO. C-240302 |
| | | TRIAL NO. B-2305652 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| NICKELAUS KING, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 20, 2024


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Schuh & Goldberg, LLP*, and *Brian T. Goldberg*, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} After an individual smoking marijuana with a gun protruding from his pocket jaywalked across a street in downtown Cincinnati, officers converged on him to perform a *Terry* stop, which then shifted to an arrest when he allegedly obstructed official business. As they conducted a search incident to the arrest, they discovered drugs and other contraband, precipitating various drug-related charges. The defendant sought to suppress the evidence, challenging the propriety of the stop and subsequent search. The trial court saw it differently, however, denying his motion, which eventually led to no-contest pleas. On appeal, the defendant attacks the trial court's suppression ruling, but, after reviewing the complete record, we see no basis for disturbing its decision. Accordingly, we affirm the trial court's judgment.

I.

{¶2} In November 2023, Sergeant Jerome Herring and Lieutenant Schofield of the Cincinnati Police Department were patrolling the Over-the-Rhine area within downtown Cincinnati. While patrolling, Sergeant Herring smelled the odor of burnt marijuana. As he searched for the origins of the scent, he and Lieutenant Schofield eventually observed a group of individuals leaning up against a wall on Vine Street, including defendant-appellant Nickelaus King.

{¶3} As the officers watched the group, Sergeant Herring saw what he believed to be a firearm sticking out of Mr. King's pocket and saw him smoking marijuana (consistent with the potent smell in the area). Once Mr. King noticed the officers' patrol car, he averted his eyes and began shifting his body in a manner to (presumably) hide the gun from the officers' view. The officers began following Mr. King as they circled around the block, continuing to observe him.

{¶4} In the midst of all of this, Mr. King jaywalked across the street, which,

in addition to the marijuana and the gun, gave officers what they believed was sufficient justification to conduct a *Terry* stop. The officers pulled down the street, jumped out of their car, and moved to detain him, admonishing him not to run. As Sergeant Herring ordered him to raise his hands and grabbed ahold of him, Mr. King tensed up and tried to pull his hands away from the officer, insisting that he had done nothing wrong.

{¶5} Once Lieutenant Schofield threatened to tase him, Mr. King reluctantly complied and put his hands behind his back. As they detained him, officers explained to Mr. King that he was being charged with obstructing official business by virtue of his interference with their investigation.

{¶6} Following Mr. King's arrest, Sergeant Herring secured the firearm and searched him finding marijuana, a bottle of oxycodone, a digital scale, and a bindle of cocaine. The officers then ran a query on the firearm, which indicated that the gun had been stolen from a nearby residence.

{¶7} Based on these discoveries, the State ultimately charged Mr. King with aggravated possession of drugs and possession of cocaine, both pursuant to R.C. 2925.11(A). Early this year, Mr. King filed a motion to suppress the evidence resulting from the search, challenging the initial stop and the search. In essence, he claimed that officers lacked both reasonable suspicion for the initial stop as well as probable cause to effectuate the arrest and search. The trial court convened a hearing where Sergeant Herring testified that the entirety of Mr. King's observed behaviors provided officers with reasonable suspicion to perform an investigatory stop. Further, Sergeant Herring detailed how Mr. King's resistant behaviors once officers made contact delayed their ability to investigate his firearm possession while smoking marijuana, smoking of marijuana in a public place, and the jaywalking incident. For that reason,

officers believed they had probable cause to arrest him for obstruction of official business. Ultimately, after sifting through the evidence, the trial court sided with the State and denied his motion to suppress, finding that officers lawfully stopped, arrested, and searched Mr. King.

{¶8} In the aftermath of this ruling, Mr. King withdrew his initial not-guilty pleas and pled no contest to both charges. Subsequently, the trial court sentenced him to community control for one year. He now appeals, presenting a single assignment of error.

## II.

{¶9} We consider Mr. King's sole assignment of error challenging the trial court's denial of his motion to suppress. An appellate court's review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When considering the motion at an evidentiary hearing, the trial court sits in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Accordingly, we generally must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). Based on the factual record, we must then independently determine, de novo, whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist. 1997).

{¶10} As we evaluate stops and seizures for compliance with the Fourth Amendment, we generally recognize three categories of police-citizen interactions, each with their own robust body of case law: (1) consensual encounters, (2) investigative detentions, or "*Terry* stops," and (3) a seizure amounting to an arrest. *State v. Hall*, 2016-Ohio-783, ¶ 16 (1st Dist.). This case began as an investigatory stop

4

under *Terry v. Ohio*, 392 U.S. 1 (1968), but then morphed into a search incident to arrest after Mr. King allegedly obstructed official business. We accordingly consider both frameworks in order to evaluate the trial court's ruling.

A.

**{¶11}** First, under *Terry*, the police may temporarily detain an individual for an investigation without running afoul of the Fourth Amendment when an officer has reasonable suspicion based on specific and articulable facts that criminal activity has occurred or is imminent. *State v. Rogers*, 2022-Ohio-4535, ¶ 18 (1st Dist.), citing *Terry* at 30. Furthermore, if an officer reasonably believes that an individual may be armed and presently dangerous, the officer may conduct a limited protective search of the individual for concealed weapons. *State v. Henson*, 2022-Ohio-1571, ¶ 15 (1st Dist.). Cognizant of an individual's privacy interests and the limitations of the Fourth Amendment, however, the scope of this search is restricted to a "pat-down" search of the individual's outer clothing for concealed weapons. *Id.* at ¶ 16, citing *State v. Andrews*, 57 Ohio St.3d 86, 89 (1991).

**{¶12}** Reasonable suspicion is an objective standard based on a totality of the circumstances and facts available to the officer at the time of the seizure. *In re J.C.*, 2019-Ohio-4815, ¶ 15 (1st Dist.). Importantly, while there is no precise definition of what constitutes reasonable suspicion, it requires more than an inchoate, unparticularized suspicion or a "hunch." *Id.* at ¶ 17. At the same time, we know that it is a less demanding standard than probable cause necessary for an arrest. *Id.* at ¶ 14, citing *State v. Jones*, 70 Ohio App.3d 554, 556-557 (2d Dist. 2019), citing *Terry* at 27.

**{¶13}** Mr. King challenges the foundation for the *Terry* stop, emphasizing that smoking marijuana in public and jaywalking are not arrestable offenses. True enough,

but officers can issue tickets for both offenses. Cincinnati Mun.Code § 506-46 and 512-1; R.C. 3780.99(B). And while an individual may carry a firearm in Ohio under a variety of circumstances, carrying a gun while smoking marijuana gives rise to a reasonable concern that the individual might be using weapons while intoxicated in violation of R.C. 2923.15(A).

**{¶14}** These factors, collectively, provide a sufficient justification that reasonable suspicion existed for a *Terry* stop. We accordingly turn to what happened next.

### B.

**{¶15}** Second, as officers approached Mr. King, a brief struggle ensued in which he moved his hands away from them and seemed poised to flee as they sought to arrest him. The State points to the factual backdrop here as justifying an arrest for obstructing official business.

**{¶16}** We accordingly must evaluate whether probable cause existed to effectuate the arrest. "'"The substance of all the definitions of probable cause is a reasonable ground for belief in guilt."'" *State v. Martin*, 2022-Ohio-4175, ¶ 17, quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). As such, probable cause exits when the facts and circumstances suffice to provide a reasonable belief that the accused has committed a crime. *Id.* The inquiry obliges the judge to review all the circumstances and make "'a practical common-sense decision'" as to whether probable cause is present. *Id.*, quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

**{¶17}** An individual obstructs official business under R.C. 2921.31(A) when he "'(1) perform[s] an act; (2) without privilege; (3) with [a] purpose [of] prevent[ing], obstruct[ing], or delay[ing] the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the

performance of the public official's duties.'" *State v. Coffman*, 2024-Ohio-1182, ¶ 13 (1st Dist.), quoting *In re Payne*, 2005-Ohio-4849, ¶ 11 (1st Dist.). Significantly, "[n]ot every act that 'can conceivably be said to hinder a police officer will rise to the level of criminal conduct'"; we typically require a substantial stoppage in the police officer's official business. *Id.* at ¶ 21-22, quoting *State v. Harris*, 2023-Ohio-4387, ¶ 22-23 (1st Dist.), quoting *Payne* at ¶ 16.

**{¶18}** Admittedly, this case doesn't present the most compelling case of obstructing official business, but it does contain enough to satisfy us of probable cause. The trial court made specific findings that Mr. King (1) tried to back away from officers as if he was going to flee, (2) pulled his arms away as he resisted Sergeant Herring's efforts to subdue him, and (3) required a threat of tasing to comply with the officer's instructions. These actions, taken by someone who was clearly armed, reasonably turned a routine *Terry* stop into a much more volatile situation.

**{¶19}** This fact pattern seems to align with *State v. Carrion*, 2023-Ohio-4386, ¶ 20 (1st Dist.), where we found that the defendant tucking his wrists and tensing his muscles to avoid the placement of handcuffs sufficed to establish that an affirmative act occurred for purposes of obstructing official business. And by refusing to accede to the officer's instructions, it appears that Mr. King acted with the purpose of preventing, obstructing, or delaying a police investigation. *See State v. Brantley*, 2022-Ohio-597, ¶ 19 (1st Dist.); *see also State v. Buttram*, 2020-Ohio-2709, ¶ 17 (1st Dist.) (explaining that a defendant's failure to cooperate at the outset of an encounter with the police was sufficient evidence of obstruction).

**{¶20}** Mr. King says that this may all be well and good, but he didn't actually interfere with anything—the entire encounter lasted under a minute. In other words, even if the State could establish several of the elements of the offense, it falls short on

the last one because the statute doesn't criminalize "every 'minor "delay, annoyance, irritation, or inconvenience"' put on a police officer." *Coffman*, 2024-Ohio-1182, at ¶ 21 (1st Dist.), quoting *Harris*, 2023-Ohio-4387, at ¶ 22 (1st Dist.), quoting *State v. Vitantonio*, 2013-Ohio-4100, ¶ 14 (11th Dist.). In *Coffman*, we held that fleeing from officers for approximately 20 seconds did not constitute a substantial stoppage of the police investigation, and therefore the defendant should not have been convicted for obstruction of official business. *Id.* at ¶ 29.

**{¶21}** But *Coffman* involved the standard for conviction, not probable cause. In this case, we don't have to determine whether Mr. King could have been convicted for obstruction of official business, just whether probable cause existed to initiate the arrest. We see enough distinguishing characteristics from *Coffman* to convince us that the officers possessed probable cause, particularly since the trial judge in *Coffman* specifically found, after trial, that "there is *no* substantial stoppage . . . ." (Emphasis added.) *Id.* at ¶ 24. And internal policies, rather than the defendant's conduct, necessitated the call to the supervisor in *Coffman* that delayed the interaction. *Id.* at ¶ 27. Unlike *Coffman*, Mr. King actively and physically interfered with the officers' attempt to secure a firearm during a legitimate investigatory stop, creating an active threat to safety. *See also Carrion* at ¶ 24 ("Therefore, however slight the hampering and impeding may have been, when reviewing the record in a light most favorable to the state, there is evidence to show that Carrion's actions hampered and impeded the officers in effectuating the arrest.").

**{¶22}** Based on the record at hand, we hold that the trial court did not err in concluding that the officers possessed probable cause.

C.

**{¶23}** Finally, after finding the *Terry* stop and the arrest valid, we turn to the

ensuing search. "Upon a person's lawful arrest, an officer may conduct 'a full search [incident to that arrest].'" *State v. Grayson*, 2023-Ohio-4275, ¶ 14 (1st Dist.), quoting *State v. Haynes*, 2015-Ohio-3432, ¶ 25 (1st Dist.), citing *United States v. Robinson*, 414 U.S. 218 (1973). As a result, we necessarily conclude that Sergeant Herring properly conducted the search of Mr. King that revealed the marijuana, bindle of cocaine, oxycodone, and digital scale. Because the *Terry* stop, arrest, and search were all lawful, we overrule Mr. King's sole assignment of error.

* * *

**{¶24}** For the foregoing reasons, on the record before us, we agree with the trial court's denial of Mr. King's motion to suppress. Accordingly, we overrule his sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**BOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.